[680 NYS2d 214]

In the Matter of DEYAN R. BRASHICH (Admitted as DEYAN RANKO BRASHICH) and BENJAMIN M. CARDOZO, Attorneys, Respondents. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, November 5, 1998

## APPEARANCES OF COUNSEL

*Mady J. Edelstein* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*John R. Bartels, Jr.,* of counsel (*Bartels & Feureisen,* attorneys), for Deyan R. Brashich, respondent.

*Sarah Diane McShea* for Benjamin M. Cardozo, respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Deyan R. Brashich was admitted to the practice of law in the State of New York by the First Judicial Department on March 28, 1966, as Deyan Ranko Brashich. Respondent Benjamin M. Cardozo was admitted to the practice of law in the State of New York by the First Judicial Department on June 29, 1942. At all times relevant to this proceeding, respondents maintained offices for the practice of law within the First Judicial Department.

By petition dated April 7, 1997, the Departmental Disciplinary Committee (the DDC) sought an order pursuant to 22 NYCRR 603.4 (d), Judiciary Law § 90 (2), and the doctrine of collateral estoppel, finding respondents guilty of professional misconduct in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3) (conduct involving dishonesty, fraud, deceit or misrepresentation), (5) (conduct prejudicial to the administration of justice) and (8) (conduct that adversely reflects on fitness to practice), DR 2-106 (A) (22 NYCRR 1200.11) (charging an illegal or excessive fee), DR 5-101 (A) (22 NYCRR 1200.20) (conflicting representation of a client due to financial or personal interests) and DR 7-102 (A) (3) (22 NYCRR 1200.33) (concealing or failing to disclose that which the lawyer is required by law to reveal) and referring this matter back to the DDC solely to consider evidence in mitigation or aggravation, if any, and to recommend the appropriate sanction.

The DDC sought to base the application of collateral estoppel on the record of the proceedings in Matter of Lucille M. Stern (file No. 1976/2260, Sur Ct, Westchester County), the memorandum decision dated December 15, 1994, the decree dated February 23, 1995 of the Honorable Albert J. Emanuelli, Surrogate, Westchester County, and the decision and order of the Appellate Division, Second Department, affirming the Surrogate's order (227 AD2d 636).

The underlying facts are as follows. This matter arose from a proceeding in Surrogate's Court to set legal fees and approve

an accounting of a trust. The trust was established by Lucille M. Stern's will. The will provided that Ms. Stern's two children, Babette and Edward, should have a life income interest in the corpus of the trust, which consisted entirely of stock in Kreisler Manufacturing Corporation. Edward was the President, Chief Executive Officer, Chairman of the Board and majority stockholder of Kreisler at all relevant times.

By operation of the will, Edward was the sole trustee of the trust. Upon the death of both Edward and Babette, their children were to inherit the trust per stirpes.

In or about August 1987, Babette retained respondent Cardozo of Cardozo & Cardozo, P. C. to represent her in an action to remove Edward as trustee and to obtain an intermediate accounting. Edward had refused to distribute any funds from the trust to Babette, who had no income and was destitute.

On November 12, 1987, Babette signed a letter agreement with respondent Cardozo that provided that she pay him $7,500 as a minimum fee and agree to a one-third contingency fee in the event she received money by settlement or court order. In or about August 1988, Cardozo engaged respondent Brashich as trial counsel for Babette.

Respondents proceeded in Surrogate's Court to seek removal of Edward as the trustee due to his failure to make a distribution to Babette despite the appreciation of Kreisler stock. The application was successful and, on September 28, 1989, Surrogate Brewster removed Edward as trustee. Edward immediately sought review by the Appellate Division, Second Department, and obtained a stay of the Surrogate's removal ruling. In the meantime, respondents submitted a fee request to Surrogate Brewster for $162,000 based on quantum meruit. The request omitted any reference to the contingency fee agreement. No hearing was held and no fee was awarded.

During the pendency of the appeal, the parties tried to settle the matter so that Edward would remain the trustee but would make a distribution to Babette. A major concern on Edward's part was to maintain control of the Kreisler stock.

In or about February 1991, the parties agreed to a settlement withdrawing the appeal. Edward, Babette and Babette's four children signed discharge agreements and releases terminating the Lucille M. Stern trust and discharging and indemnifying Edward as trustee. According to the discharge agreements, the Kreisler stock was to be divided in half and distributed as income, one half of the stock to Edward and one

half to Babette after which Kreisler would immediately buy Babette's stock at $10 per share: $1,750,064. A separate agreement provided that Babette would establish a trust for herself with her son Frederick as trustee, and trusts for the benefit of her four children with a life interest for her, funded by approximately half of the monies she received for the stock ($881,730).

At this time, respondents demanded their fee and agreed to accept a "reduced" amount of $500,000. Three of Babette's children agreed to contribute in equal parts ($125,000 each) toward their mother's total fee of $500,000. Respondents received a total of $375,000 from the three consenting children, but Babette's fourth child, Deborah, objected to respondents' fee demand. Respondents agreed to apply to the Surrogate's Court for an award of counsel fees due them from Deborah.

On February 6, 1991, respondents filed a petition in Surrogate's Court pursuant to SCPA 2110. The request was based upon one third of Deborah's one-quarter share of the distribution from her mother (i.e., one third of $437,660), plus additional fees and costs of the appeal and the then-pending application, for a total of $176,367.76.

On September 26, 1991, Surrogate Emanuelli denied respondents' motion for summary judgment on their fee petition and ordered Edward to file an intermediate accounting. The Surrogate appointed a guardian ad litem to represent the interests of the living and yet unborn grandchildren of Edward and Babette.

Both Deborah and the guardian ad litem answered respondents' petition, objecting to the fee, among other things. The answers objected, *inter alia,* to the designation of Babette's distribution as "income", to the destruction of Lucille M. Stern's trust as set forth in her will, and to respondents' fees, noting that the court had not approved the settlement or the fee. The guardian ad litem also objected to the potential tax consequences of the settlement and to the negative impact on the grandchildren by the change in the measuring lives of the new trusts. Both answers alleged that respondents had deceived Babette and her children in a manner calculated to maximize their fee, by denominating the funds paid to Babette as "income" so as to justify taking one third of her "income" pursuant to their continency fee agreement. The answers further alleged that respondents acted illegally by destroying the trust without court approval and by recommending that Babette indemnify Edward for any losses resulting from the destruc-

tion of the trust, in violation of EPTL 11-1.7. Finally, the answers alleged that respondents improperly failed to disclose to the court that they had already received $375,000 in fees and failed to properly advise Babette that they had made a prior application to Surrogate Brewster for legal fees based upon the value of their services.

A seven-day trial was held in June, July and August 1993 before Surrogate Emanuelli on respondents' fee petition. Respondent Brashich represented himself and respondent Cardozo. Both respondents testified at the trial. Respondent Brashich called witnesses and cross-examined adverse witnesses, including Babette, Deborah and Edward's attorney, and submitted evidence on respondents' behalves.

The court directed respondents to place in escrow with the guardian ad litem the $375,000 fee they had previously collected from Babette's three children without court approval pending the court's determination of their fee application. Respondents did so after failing to obtain a stay of that order from the Appellate Division.

On December 15, 1994, Surrogate Emanuelli issued a memorandum decision, upon which collateral estoppel is premised. The court found that respondents' actions in terminating the Lucille M. Stern trust and in indemnifying Edward as trustee without court approval were improper, violated the grantor's intent and were contrary to the limitations on the powers of trustee to distribute principal or income as set forth in EPTL 10-10.1. The court further determined that respondents deceitfully presented to their client only the settlement proposal that triggered their one-third contingency fee. The Surrogate found that respondents had improperly discouraged any attempt to settle the litigation in conference with Surrogate Brewster, even though Surrogate Brewster was available for that purpose, and they failed to advise their client or her children that the court could and would fix counsel fees.

The Surrogate reconstituted the testamentary trust by dividing it into two trusts, one for the benefit of Babette and her family and one for Edward and his family. Applying quantum meruit, the Surrogate fixed respondents' total legal fees at $165,000, noting that their contingency fee demand was more than three times their own estimates of the value of their services, and that their attempt to destroy the trust without court approval reduced the value of their services.

In a section entitled, "Brashich's and Cardozo's Deceit", the Surrogate catalogued the instances in which respondents "con-

cealed information from, and misled, their client, her children and the court."

The Surrogate found that the value of respondents' services, inclusive of disbursements, was $165,000. In addition, respondents were surcharged the sum of $50,000 for their share of unnecessary legal and expert fees incurred by the guardians, reducing the sum to $115,000 to be paid from Babette's reconstituted trust.

Both respondents and Babette retained Tenzer Greenblatt, L. L. P., as counsel, and appealed the Surrogate's decree to the Appellate Division, Second Department. On May 28, 1996, the Second Department upheld the Surrogate's ruling, finding that the attempted termination of the trust was violative of the law and contrary to the intent of the testamentary trust, and sustaining the Surrogate's decision awarding respondents' fees (*Matter of Stern,* 227 AD2d 636, *supra).* With regard to the issue of counsel fees, the Second Department's decision concludes, "Inasmuch as the record supports the findings of the Surrogate regarding the services rendered by and the conduct of the appellant attorneys, the court's determination as to counsel fees was proper (*see, Matter of Phelan,* [173 AD2d 621])." (*Supra,* at 637.)

In seeking a collateral estoppel ruling, the DDC maintained that respondents' conduct in this matter violated the Code of Professional Responsibility in the following respects. Respondents' deceit in failing to disclose alternative settlements of both the trust litigation and their fee violated DR 1-102 (A) (4) of the Code. Respondents' failure to obtain the court's approval before taking $375,000 in fees violated DR 1-102 (A) (4) and (5) of the Code. Respondents' failure to disclose to the court in their petition that they had already taken $375,000 in fees violated DR 1-102 (A) (5) and DR 7-102 (A) (3) of the Code. Respondents' conflict and self-dealing regarding their contingent fee agreement, and their failure to protect their client by terminating a trust and indemnifying the trustee, were deceitful in violation of DR 1-102 (A) (4) of the Code, and breached their fiduciary duty as an impermissible conflict, in violation of DR 5-101 (A) of the Code. Respondents' fee demands were excessive, far exceeding respondents' own accounting to the court, in violation of DR 2-106 (A) of the Code. Finally, respondents' misconduct as found by the Surrogate constituted conduct that adversely reflects on the respondents' fitness to practice law (DR 1-102 [A] [8]).

By an order entered September 17, 1997, this Court found respondents guilty of professional misconduct in violation of

DR 1-102 (A) (4), (5) and (8) and DR 5-101 (A) and referred this matter to the DDC for a hearing solely to consider evidence in mitigation or aggravation, if any, and for a recommendation by the DDC of the appropriate sanction to be imposed upon respondents.

On December 12, 1997, a Hearing Panel convened to hear evidence in mitigation and aggravation of sanction. Subsequent hearings were held on January 15, January 21, February 4 and February 11, 1998. In addition to Cardozo and Brashich, the Panel heard testimony from their client, Babette Rose Hecht, and her son, Frederick (Toby) Hecht. The Panel also heard testimony from a number of character witnesses. At the conclusion of the hearing, DDC staff counsel recommended that Cardozo be publicly censured and that Brashich be suspended from practice for six months. By a report and recommendation dated June 16, 1998, the Hearing Panel adopted the recommendation of DDC staff counsel.

The Panel found numerous factors in mitigation pertaining to both respondents. The Panel found that the primary evidence in mitigation was that Babette and Toby had vigorously supported respondents, flying from California to New York in order to testify. Moreover, based on the testimony of Babette and Toby, the Panel questioned the essence of many of the Surrogate's findings. For instance, Babette and Toby both testified that they regularly consulted with the respondents and they did not believe respondents had taken advantage of them with respect to the fee. Although Cardozo admitted that he did not tell Babette between September 1989 and February 1991 that she could have her fees set by the Surrogate rather than by the retainer, the Panel found that Babette was aware of alternatives to the contingency fee agreement. Babette regularly consulted with Toby and Toby was "clearly aware of the option for the Surrogate to set fees." This was evidenced not just by Toby's testimony, but by letters written by Toby. The Panel then addressed the mitigating factors with respect to respondent Cardozo. The Panel found that Cardozo's expression of genuine remorse was a mitigating factor, citing Cardozo's testimony regarding his April 2, 1990 letter misleading Toby about the Surrogate's inability to meet with him. The Panel also found the following mitigating factors with respect to Cardozo: (1) his long unblemished career in over 60 years of practice; (2) Cardozo's age (83) and health ailments; and (3) the testimony of respondent's character witnesses regarding his high moral character, honesty and trustworthiness.

With regard to respondent Brashich, the Panel found that the fact that he received six prior admonitions, primarily relating to neglect of legal matters, should be considered in aggravation of the charges. The Panel stated that Brashich's disciplinary record had been the major factor leading the Panel to recommend a suspension from practice.

The Panel found the following mitigating factors with respect to Brashich: (1) the fact that he suffered numerous personal tragedies between 1985 and 1993; (2) his long-standing commitment to *pro bono* work; (3) the testimony of his character witnesses and affidavits attesting to his moral character and fitness; and (4) Brashich's timely good-faith effort to minimize the impact of Cardozo's misleading correspondence by correcting Cardozo's misstatements.*

In making its final recommendation as to sanctions, the Panel rejected Cardozo's request for a private reprimand, noting that "the already public notoriety of this matter in published judicial opinions suggest the appropriateness of a public rather than private sanction." The report concludes: "Finally, the Panel notes that several years have passed since Surrogate Emanuelli's opinion, and that respondents have suffered a toll on their professional reputations and personal lives during this period. Respondents have cooperated with the DDC and appeared candid in expressing their remorse for any violations that may have occurred. We thus underscore that in the First Department, '[the] belief that [a] lengthy disciplinary proceeding has had a chastening effect upon the Respondent[s]' may be considered in mitigation."

By petition dated July 22, 1998, the DDC moves for an order pursuant to 22 NYCRR 603.4 (d) confirming the Panel's recommendation that respondent Cardozo be publicly censured and respondent Brashich be suspended for six months.

In our view, the recommendation as to Cardozo should be confirmed because a public discipline is warranted in any case involving deliberate deceit of a client arising out of self-interest. Regardless of the support respondent has received from his client and her son, it is abundantly clear that respondent sought to deceive them in order to obtain a higher fee and this conduct is reprehensible. Moreover, the Panel's recommendation takes into account all of the mitigating factors.

---

* In a footnote, the Panel noted that it was significant that the bulk of evidence in support of Surrogate Emanuelli's findings with respect to respondents' misrepresentations consisted of letters authored by Cardozo, not Brashich.

As for Brashich, this Court may take into account the Panel's finding that Cardozo committed the overt acts of misrepresentation and that Brashich simply failed to correct all of Cardozo's misstatements, although it did not cite this as a mitigating factor. Thus, even though Brashich's disciplinary record aggravates the sanction, it would not necessarily be unfair to impose a sanction on Brashich which is comparable to the sanction imposed on Cardozo. Also, given the extraordinary mitigating factors in Brashich's case, even a short period of suspension seems unduly harsh.

Accordingly, it is our determination that as to Cardozo, the DDC's petition to confirm the recommended sanction of public censure for Cardozo should be granted, and that as to Brashich, the DDC's petition to confirm the Panel's recommended sanction of a six-month suspension for Brashich be denied, the recommended sanction be disaffirmed and respondent Brashich also receive a public censure.

SULLIVAN, J. P., NARDELLI, WILLIAMS, TOM and SAXE, JJ., concur.

Petition granted insofar as to confirm the Hearing Panel's recommended sanction of public censure for Benjamin M. Cardozo, and denied insofar as to disaffirm the recommended sanction for Deyan R. Brashich, and both respondents are publicly censured.